IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL CASE NUMBER: |
| ALPHONSO I. WATERS, JR. | : 1:16-CR-00407-TCB-JSA |

## **REPORT AND RECOMMENDATION**

Defendant's Motion to Suppress Evidence (from March 28, 2014 Search Warrant) [14] alleges that a warrant issued by U.S. Magistrate Judge Russell G. Vineyard lacked a basis in probable cause. Defendant argues that the warrant application is deficient on its face and, separately, that the affiant improperly included privileged information obtained from Defendant's attorney. Defendant argues that the facts supporting the warrant are even more deficient when the alleged privileged information is excised. The Court finds, however, that Judge Vineyard had a reasonable basis to find probable cause, and that no privileged information was contained in the application. Thus, the Court **RECOMMENDS** that the Motion to Suppress [14] be **DENIED**.[1]

---

[1] Defendant also filed a second Motion to Suppress [15], which was styled as "preliminary." Defendant in this Motion indicated that he needed to research certain issues before determining whether or not he would in fact pursue a second Motion to Suppress, and requested thirty days to perfect the motion if he were to determine that suppression was warranted. The Court granted this extension, and , on January 6, 2017, ordered Defendant to perfect this Motion by February 3, 2017 [16]. The Court stated that if no such perfected motion was filed by this deadline,

# BACKGROUND

On March 28, 2014, Special Agent David W. Rich of the Treasury Inspector General Tax Administration applied for and obtained a warrant from U.S. Magistrate Judge Russell G. Vineyard, to search a business, identified as Family Practice of Atlanta ("FPOA"), on Scott Boulevard in Decatur, GA, for various computer-related and other records. *See* [14-1] at 1, 28-34. The following facts are taken from the affidavit supporting the warrant [14-1].

FPOA operates as a medical practice, which is co-owned by Defendant and his wife, Dr. Sondi Moore-Waters. *Id.* ¶ 5. Defendant and Dr. Moore-Waters are also joint owners of another company, Sondial Medical Properties, LLC. *Id.* ¶ 7. In or about October 2013, Sondial sought a loan in the amount of $6 Million from Colony Capital Acquisitions, LLC ("Colony"), to fund the construction of a medical office building in Decatur, Ga. *Id.* ¶ 8. Defendant received assistance from two loan brokerage companies, Empire Realty Holdings, LLC ("Empire") and Chesterfield Faring LTD ("CFL"). Specifically, officials from these companies communicated with Colony on Defendant's behalf, including by submitting documents and correspondence. *Id.*

---

the Court would consider the "preliminary" motion to be withdrawn [16]. No perfected motion was filed, and counsel at the status conference on March 23, 2017 confirmed that he was not pursuing this potential motion. Thus, the Court **RECOMMENDS** that the "preliminary" Motion [15], which technically remains pending, also be **DENIED**.

On or about December 7, 2012, the IRS filed federal tax liens in the Superior Court of Fulton County, Georgia against Defendant and Dr. Moore-Waters in the amount of $328,656. *Id.* ¶ 9. These liens were not disclosed to Colony in the loan application but Colony nevertheless discovered the liens. *Id.* ¶¶ 11, 12. During December, a representative of Colony told D.G., an attorney representing Defendant in his negotiations with Colony, that Colony would not approve the loan unless documentation were provided of an IRS-approved plan for satisfaction of the outstanding tax liability. *Id.* ¶ 12.

On or about December 5, 2013, an accountant representing Defendant before the IRS submitted a proposed payment plan to the IRS to resolve the liens. *Id.* ¶ 13. The accountant told Defendant on December 9, 2013 that he was negotiating the payment plan with the IRS and that he (the accountant) anticipated resolving the matter by April 2014. *Id.* ¶ 14. Both the accountant and D.G. also requested that the IRS expedite consideration of the proposal. *Id.* ¶¶ 15, 16. On December 16, 2013, at approximately 4:17 pm, an IRS official send a letter to the accountant and Defendant, via facsimile, stating that the request was being forwarded to the appropriate departments for consideration but that additional time, until March 31, 2014, would be necessary. *Id.* ¶ 17.

On or about December 16, 2013, at 5:59 pm, an e-mail was sent from address al.waters@fpoallc.com to Defendant's contact at Empire (T.K.B.),

attaching a letter purporting to be from the IRS, Office of the Chief Counsel, approving the payment plan that had been proposed by Defendant. *Id.* ¶ 18. T.K.B. forwarded this approval letter to Colony, which induced Colony to approve the loan. *Id.* It was later determined in the investigation that the purported IRS approval letter was not genuine, had been fabricated, and that the IRS had not in fact approved the payment plan. *Id*. ¶¶ 21-28.[2]

D.G. (Defendant's attorney) told investigators that Defendant uses two email addresses to communicate with D.G., one of which is al.waters@fpoallc.com. Agent Rich's review of internet domain records further revealed that the fpoallc.com domain is associated with FPOA, which is located at the subject premises. *Id. ¶¶* 19-20. Thus, Agent Rich requested, and Magistrate Judge Vineyard authorized, a search of FPOA's offices and computer systems for evidence of the loan fraud scheme.

In addition to the search warrant paperwork, Defendant attaches two other exhibits: Exhibit B, which is an affidavit from Defendant attesting to his attorney-client relationship with D.G., and Exhibit C, which is a report prepared by Agent Rich of an interview with D.G., in which D.G. relayed various statements that

---

[2] The affidavit describes in detail a number of facts to support the inference that the purported IRS letter sent on December 16, 2013 from Al.waters@fpoallc.com was false. Defendant's motion does not challenge the sufficiency of the affidavit with regard to demonstrating that the purported IRS approval letter was fabricated. Thus, the Court will not detail these facts here.

Defendants asserts are protected from disclosure by the attorney-client privilege.

## DISCUSSION

### A. *Attorney-Client Privilege*

Part of Defendant's argument is that Agent Rich included privileged information in the affidavit, which was improperly divulged to the investigators by Defendant's attorney, D.G. Defendant urges the Court to excise that information –specifically, D.G.'s disclosure of Defendant's use of the al.waters@fpoallc.com email address–and to find that the remainder of the affidavit lacks probable cause. It is logical for the Court to first address this discrete evidentiary issue before turning to the broader legal question of whether the affidavit establishes probable cause.

"'The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice.'" *In re Grand Jury Proceedings 88–9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990) (*quoting In re Grand Jury Subpoena of Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982)). Recognition of the attorney-client privilege is intended to encourage frank communication with an attorney. *See Swidler & Berlin v. U.S.*, 524 U.S. 399, 403 (1998).

The party claiming the privilege bears the burden of proving the existence of the privilege. *See, e.g., In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223,

1225 (11th Cir. 1987). The party claiming the privilege must generally establish the following elements: (1) the holder of privilege is a client; (2) the person to whom communication was made is a member of the bar and that person is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which attorney was informed by the client without the presence of strangers for the purpose of securing legal advice; and (4) the privilege is claimed and not waived by the client. *See In re Grand Jury Proceedings 88–9 (MIA)*, 899 F.2d at 1042.

Defendant's brief lists a number of statements that D.G. made to Agent Rich during an investigative interview, which Defendant asserts reveal confidential and privileged material that D.G. was not at liberty to share. For purposes of this Motion to Suppress, however, the only allegedly privileged statement from D.G. that Agent Rich included in the search warrant application was that Defendant used the [al.waters@fpoallc.com](al.waters@fpoallc.com) email address.

Defendant's objection to the inclusion of this information in the warrant application is easily overruled. A client's mere email address, telephone number, or other item of contact information is not itself privileged, simply because the client used that email or telephone number to speak to his lawyer. *See Andiomo Team, Inc. v. Andiomo Team, Inc.*, 2008 WL 4327255, *3 (S.D. Fla. September 18, 2008) (compelling disclosure of contact information client used to communication

with attorney where "[client's] identity and contact information were not a subject about which [client] sought legal counsel."); *In re Bautista*, 2007 WL 4328802 (Bkrtcy.N.D.Cal. Dec.10, 2007) (finding that client's contact information is preparatory or incidental to, and not part of, information provided ... for the purpose of obtaining legal advice," and therefore not protected by the attorney-client privilege); *Secs. & Exchange Commission v. Dowdell*, 2006 WL 3876294 (M.D.Fla. May 15, 2006) (ordering production of client contact information in response to attorney-client privilege objection).

Defendant has not demonstrated that he sought legal advice from D.G. specifically about his email address or that the email address was substantively material to any advice. The mere fact that Defendant used that email to communicate with D.G.–which is at most what Defendant shows–fails to implicate any privilege. Thus, the Court considers the affidavit in its entirety without "excising" the reference to Defendant's email address.

### 2. *Probable Cause*

A judicial officer asked to issue a search warrant must make a practical common sense decision, given all the facts set out in the application, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213 (1983). Courts reviewing the sufficiency of warrant applications after-the-fact should not do so in a hyper-technical manner;

Rather, courts must employ a realistic and common-sense approach so as to encourage recourse to the warrant process and to recognize the significant deference afforded to the decisions of the issuing judge. *Id.*; *United States v. Miller*, 24 F.3d 1357 (1994). Ultimately, the question is "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

Moreover, regardless of whether it agrees that the affidavit established probable cause, the reviewing court must deny suppression unless the affidavit was so lacking as to render official belief in the validity of the warrant entirely unreasonable. *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002). This is because the purpose behind the exclusionary rule–to deter law enforcement officers from violating the Constitution–is not met where an officer's reliance on a search warrant issued by a neutral judge was objectively reasonable. *See United States v. Leon*, 468 U.S. 897, 926 (1984).

Defendant does not argue that the affidavit fails to demonstrate probable cause of a crime, to wit, the submission of a false and fraudulent document to the IRS in furtherance of the Defendant's and his wife's application for a loan. Defendant, rather, challenges whether the affidavit sufficiently links himself to the criminal conduct or, more importantly, establishes the likelihood that evidence of criminal conduct would be found in the offices and computer systems of FPOA.

Whether the affidavit sufficiently links Defendant himself to the criminal conduct is only indirectly relevant to the question of whether to suppression this search warrant. The questions before the Court are simply whether there is sufficient evidence of (a) criminality, and (b) the presence of evidence at the premises to be searched. The former is not disputed for purposes of this motion. The latter determination simply requires a finding that someone–the Defendant or another–engaged in criminality or otherwise deposited evidence that still exists at FPOA.

Applying the deferential standard that the law requires, the Court finds that Judge Vineyard had a reasonable basis to conclude that evidence of the loan fraud scheme would likely be found at FPOA. First, although the loan related to a different medical business, that business (Sondial) was also co-owned by the same husband-wife couple that co-owned FPOA. Second, the false IRS document was sent by an email address specifically used by Defendant, the co-owner and Chief Operating Officer of FPOA.[3] Third, the email address on its face purported to be associated with FPOA, as it reflected the very name fpoallc.com as the domain.

---

[3] As explained above ,there is no basis to excise this fact notwithstanding that it was supplied by Defendant's attorney, D.G. In any event, while this fact strengthens the showing of probable cause, probable cause would still exist even absent the information provided by D.G. as to the Defendant's email address. The remaining information discussed above sufficiently permits the inference that the al.waters@fpoallc.com account was associated with FPOA.

Fourth, the agent attested that internet domain registry records show this domain name as associated with FPOA.

Defendant appears to criticize the agent's reliance on internet domain registry records, on the basis that the agent did not define the term "domain name," or otherwise explain these records. Perhaps more explanation may have been helpful. But Defendant cites no authority for the proposition that further detail was required to establish probable cause. Indeed, to the contrary, it is well established that the considerations of probable cause "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). The affiant is not required to provide the same level of information that may be necessary at trial, under the rules of evidence, to properly authenticate public records or business records. Here, the Agent explained that he reviewed internet domain records, and that these records revealed that fpoallc.com (the domain name that formed the basis of the [al.waters@fpoallc.com](mailto:al.waters@fpoallc.com) email account) is associated with the company FPOA at the subject premises. Defendant does not establish that Judge Vineyard could not have reasonably relied on this assertion of fact in considering the question of probable cause.

Regardless of the reference to domain name registration information, the facts in the affidavit more than sufficiently tied the December 13 email

transmitting the false IRS letter to FPOA.  As noted above, the email was sent from an address used by FPOA's co-owner and Chief Operating Officer, and was sent for the obvious benefit of the two co-owners of FPOA.  And the email address on its face suggests an association with FPOA, as the address actually includes the name of that entity.   These facts permitted a reasonable inference that FPOA (including its computer systems) were likely used in connection with the transmission of the false letter.  In combination with the other facts supplied in the affidavit particularly as to the nature of computer evidence, these facts permitted a reasonable inference that evidence would likely be found during the search of FPOA.  In any event, even if this Court had a basis to quibble with the question of probable cause, the affidavit was not so wholly lacking as to deprive the officers of a good faith belief in the legality of the warrant.  For all of these reasons, Defendant's motion fails.

## CONCLUSION

Thus, Defendant's Motions to Suppress [14][15] should be **DENIED**.   The case is otherwise **READY FOR TRIAL**.

IT IS SO **RECOMMENDED** this 24th day of April, 2017.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE